The State of Ohio, Appellant, v. Hooper, Appellee.

[Cite as State v. Hooper (1979), 57 Ohio St. 2d 87.]

(No. 78-668—Decided March 21, 1979.)

*Mr. Simon L. Leis, Jr.*, prosecuting attorney, *Mr. William E. Breyer* and *Mr. Merlyn D. Shiverdecker*, for appellant.

*Mr. Timothy A. Hickey*, for appellee.

William B. Brown, J. The sole issue raised by the instant cause is whether, under Ohio's felonious sexual-penetration statute, a finger is an "object."

R. C. 2907.12 provides, in pertinent part:

"(A) No person without privilege to do so shall insert any *instrument, apparatus* or *other object* into the vaginal or anal cavity of another, not the spouse of the offender, when any of the following apply:

"(1) The offender purposely compels the other person to submit by force or threat of force." (Emphasis added.)

Appellant argues that the dictionary definition of an

object applies to R. C. 2907.12(A). It then concludes that, since the dictionary defines an object as "anything [or "something"] visible or tangible,"[1] a finger is an object. We are not persuaded by that reasoning.

"The primary purpose of the judiciary in the interpretation or construction of statutes is to * * * ascertain the legislative will." *Henry* v. *Central Natl. Bank* (1968), 16 Ohio St. 2d 16, paragraph two of the syllabus; 2A Sutherland on Statutory Construction 15, Section 45.05, and cases cited therein. Moreover, where statutory language clearly expresses that legislative intent, that language will not be construed by the courts. *Provident Bank* v. *Wood* (1973), 36 Ohio St. 2d 101, 106; *Katz* v. *Dept. of Liquor Control* (1957), 166 Ohio St. 229, 231. Words are not absolutes, however. Because their meanings may vary according to context, custom and usage (*American Oil Co.* v. *State Highway Board* [1962], 122 Vt. 496, 177 A. 2d 358), statutory language cannot be declared clear or ambiguous until the context in which it appears or the connotations which it may carry are taken into consideration.

R. C. 2907.12 is a sex-offense statute. Of the other 19 jurisdictions which specifically prohibit penetration of an individual's vagina or anus by something other than the male sex organ, 12 use the term "object" and clearly exclude parts of the body from that term.[2] While the language

---

[1] See the definitions of "object" contained in Black's Law Dictionary (4 Ed.), and Webster's Third New International Dictionary.

[2] See Ariz. Rev. Stat. Ann., Section 13-1401(3) (1978); Colo. Rev. Stat. Ann., Section 18-3-401(5) (1975); Me. Rev. Stat. Ann., Title 17-A, Section 251(1)(C) (1976); Neb. Reissue Rev. Stat., Section 28-408.02(5) (1975); Nev. Rev. Stat., Section 200.364(2) (1977); N. H. Rev. Stat. Ann., Section 632-A:1(V) (1975); N. Y. Consol. Laws Ann., Penal Law, Sections 130.70(1) and 130.00 (McKinney 1978); S. D. Compl. Laws Ann., Section 22-22-2 (1975); Tenn. Code Ann., Section 39-3702(8) (1978); Vt. Stats. Ann., Title 13, Section 3251(1) (1977); Wis. Stat. Ann., Section 940.225(5)(C) (1978); and Wyo. Stat. Ann., Title 6, Section 6-4-301(viii).

New York is the only state with a statute equivalent to R. C. 2907.-12. (See N. Y. Consol. Laws Ann., Penal Law, Section 130.70[1] [McKinney 1978].) Like Ohio's sexual-penetration statute, the New York statute focuses solely on the offense of penetrating the vagina or

used by those 12 jurisdictions does not control our reading of Ohio law,[3] it suggests that the broad dictionary definition of an object does not necessarily apply to R. C. 2907.-12(A) and that, therefore, this court must construe the statute in order to determine legislative intent.

R. C. 2907.12(A) prohibits the insertion of "any instrument, apparatus or other object." The statute lists three nouns—two specific and the third, general. The general term is immediately preceded by the word "other"—a word which refers to the two specific nouns in the list and suggests legislative intent to limit the scope of the general noun to those objects having the characteristics of those specific nouns (*Glidden Co.* v. *Glander* [1949], 151 Ohio St. 344, 350). In addition, R. C. 2907.12 is a criminal statute which must be strictly construed against the state ( R. C. 2901.04 [A]).

Since R. C. 2907.12 lists specific terms followed by a catchall word which is linked to those specific terms by the word "other," and since the statute must be construed strictly, it appears to be subject to the doctrine of *ejusdem generis*.[4] *State* v. *Aspell* (1967), 10 Ohio St. 2d 1, paragraph two of the syllabus, describes the operation of this doctrine in the following manner:

"Under the rule of *ejusdem generis,* where in a statute terms are first used which are confined to a particular class of objects having well-known and definite features and characteristics, and then afterwards a term having per-

---

anus. (The other states proscribing such activity do so in sexual battery or sexual imposition statutes or their equivalents.) The memorandum supporting the New York law describes the behavior its sponsor hoped to discourage in the following manner: "It is not uncommon for sex crime defendants to force foreign objects into the vagina or anal cavities of their victims. Objects such as broom handles, gun barrels, night sticks, closet poles and hangers have been used."

[3] 2A Sutherland on Statutory Construction 337, Section 52.03. *Funk* v. *United States* (1933), 290 U. S. 371; *In re Sloan* (N. D. Ohio 1968), 285 F. Supp. 1.

[4] *Ejusdem generis* is particularly applicable to criminal statutes which must be strictly construed. *Giant of Maryland, Inc.,* v. *State's Atty. for Prince George's Co.* (1975), 274 Md. 158, 334 A. 2d 107; *State* v. *Kahalewai* (Hawaii 1975), 541 P. 2d 1020.

haps a broader signification is conjoined, such latter term is, as indicative of legislative intent, to be considered as embracing only things of a similar character as those comprehended by the preceding limited and confined terms."

Once the doctrine of *ejusdem generis* is applied to Ohio's sexual-penetration statute, it becomes clear that a finger is not an "object" within the purview of R. C. 2907.-12(A). In general, dictionaries define instruments and apparatuses as implements or tools, or groups of implements or tools. One characteristic common to instruments and apparatuses is that they are inanimate. (The American Heritage Dictionary, for instance, defines an instrument as a "mechanical implement.")[5] Since, under the doctrine of *ejusdem generis,* nothing may be construed to fall within the catchall term "object" unless it shares the characteristics of instruments and apparatuses, only inanimate objects fall within the purview of R. C. 2907.12(A). A finger is not inanimate. It is part of the human body. Therefore, a finger is not an object under R. C. 2907.12(A), and Ohio's sexual-penetration statute does not encompass digital penetration.[6] Since the activity for which the defendant was convicted under R. C. 2907.12 was limited to digital penetration, his conviction must be reversed.

[5]See, also, the definitions of "instrument" and "apparatus" in Black's Law Dictionary (4 Ed.) and the Random House Dictionary.

[6]The General Assembly's use of the word "insert" in R. C. 2907.12 also supports the conclusion that a finger is not an object under that statute. "Insert" connotes thrusting an object into something with the possibility of leaving it there. (Webster's Third New International Dictionary defines insert as "to set (something) in * * * [to] put or thrust in * * * to put or introduce into * * * to set in and make fast * * *.") That connotation does not apply to penetration by a part of the aggressor's body.

Appellant also argues that *ejusdem generis* does not apply to the instant statute because all three nouns listed in R. C. 2907.12(A) are general, and each should be treated as if it formed a separate class. We are not persuaded by this argument. The word "object" has a broader meaning than do the words "instrument" and "apparatus." Moreover, instruments and apparatuses fall within the same class. The main distinction between the two is that the latter is usually a group or collection of the former.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

P. Brown, Sweeney and McCormac, JJ., concur.
Celebrezze, C. J., and Herbert, J., dissent.
Holmes, J., not participating.

McCormac, J., of the Tenth Appellate District, sitting
for Locher, J.

Celebrezze, C. J., dissenting. A resolution of the issue
presented in this appeal requires not only a judicial analy-
sis of one specific statute but an examination of the total
range of individual conduct the General Assembly sought
to proscribe by enacting that portion of R. C. Chapter 2907
dealing with the category of offenses known as sexual as-
saults. R. C. 2907.12(A) derives its meaning from the con-
text in which it is placed and by a construction in harmony
with other statutes dealing with related offenses. As indi-
cated in 50 Ohio Jurisprudence 2d 199, Statutes, Section
221:

"'* * * A code of statutes relating to one subject is
presumed to be governed by one spirit and policy, and in-
tended to be consistent and harmonious, and *all of the
several sections are to be considered in order to arrive at
the meaning of any part,* unless a contrary intent is clear-
ly manifest." (Emphasis added.)

The offenses that are described in that portion of R.
C. Chapter 2907 dealing with sexual assaults include the
following: R. C. 2907.02, rape; R. C. 2907.03, sexual bat-
tery; R. C. 2907.04, corruption of a minor; R. C. 2907.05,
gross sexual imposition; and R. C. 2907.06, sexual imposi-
tion. A scrutiny of the foregoing statutes reveals two spe-
cifically defined modes of sexual activity that are prohibit-
ed—"sexual conduct" and "sexual contact," as defined in
R. C. 2907.01(A) and (B), respectively.[7]

[7] R. C. 2907.01 reads, in pertinent part:
"(A) 'Sexual conduct' means vaginal intercourse between a male

In addition to these statutory provisions the General Assembly enacted R. C. 2907.12 to deal with a third category of prohibited sexual activity. The conduct delineated does not incorporate the aforementioned definitions set forth in R. C. 2907.01, but is described as the felonious *penetration* or *insertion* by "any instrument, apparatus, or other object into the vaginal or anal cavity of another." (Emphasis added.)

In summary, the sexual assaults encompassed by R. C. Chapter 2907 involve sexual conduct, sexual contact, and felonious sexual penetration. Since it is beyond dispute that the act of the defendant-appellee is a sexual assault, the question becomes "where in the aforementioned statutory scheme is this factual scenario to be found?" The majority opinion in the Court of Appeals noted that appellee's conduct would "come within the scope of the crime of gross sexual imposition, although we are not obliged here to so decide." I strongly disagree with that observation as well as the conclusion of the majority of this court that appellee's actions do not amount to felonious sexual penetration pursuant to R. C. 2907.12(A).

As indicated previously, the gross sexual imposition statute, R. C. 2907.05, deals with "sexual contact" which, in turn, encompasses the act of *touching* as set forth in R. C. 2907.01(B). The act of the appellee involved not only a *touching* but an obvious *penetration* of the victim's vagina.[3]

---

and female, and anal intercourse, fellatio, cunnilingus between persons regardless of sex. *Penetration*, however slight, is sufficient to complete vaginal or anal intercourse.

"(B) 'Sexual contact' means any *touching* of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if such person is a female, a breast, for the purpose of sexually arousing or gratifying either person." (Emphasis added.)

[3] In the trial court the attorney for the appellee moved to dismiss the indictment on the charge of felonious sexual penetration arguing that a finger was not an "object" within the purview of R. C. 2907.12. In the alternative, he requested that the trial judge *reduce* the charge to the lesser included offense of gross sexual imposition pursuant to R. C. 2907.05.

The trial judge perceptively noted the distinction between "touch-

It is equally clear that the General Assembly intended to make a conspicuous distinction between those two categor-

ing" and "penetrating" and the necessity of giving the term "object" its standard dictionary definition. The analysis of these issues by the trial judge reads as follows:

"THE COURT: As counsel are aware, I have had the benefit of the memorandum filed on April 8th by Mr. Hickey, and the argument of the prosecutor, Mr. Shiverdecker.

"In making my finding, I think the significant things are two in number. It would be important to the argument advanced by Mr. Hickey if the facts presented here came clearly within the purview of another criminal section. General principles of construction would then dictate if it were questionable whether the conduct were covered by the section at hand, but clear that it was covered by another section, and it should be the other section that should govern.

"This gets us to the definitions of sexual conduct and sexual contact, both of which were covered in Mr. Hickey's memorandum. Sexual conduct does deal with penetration. The statute before me now deals with penetration.

"It is argued the appropriate section would be that which proscribes 'gross sexual imposition,' which deals with sexual contact, as has just been pointed out by the prosecutor.

"*Sexual contact deals only with any touching of certain areas of the body, but not specifically penetration.*

"*So the legislature has in its statutory scheme seemed to have differentiated between penetration and the mere touching; and the section argued by the defendant deals with the mere touching. So that we don't have the situation where we have a questionable application in front of us and conduct that is clearly covered by another section.* [Emphasis added.]

"The second significant thing deals simply with the interpretation of the language, 'other object.' Of significance here, I think, is, first of all, the dictionary definition of 'object,' at least the Webster's New Collegiate Dictionary definition of 'object,' which includes something that is or is capable of being seen, touched or otherwise sensed. Certainly, a finger falls within that definition.

"Secondly, counsel at least are familiar with cases that have been before the Court of Common Pleas in recent history involving, in one instance, an A-1 bottle and, in another instance, a pork chop bone. Under the terms of this statute, if 'object' were to be tied strictly to 'apparatus or instrument,' it might be argued that because neither an A-1 bottle nor a pork chop bone are an apparatus or an instrument, likewise not another object, and without the purview of the section.

"However, I think counsel would probably agree that it was the insertion of that kind of object that the legislature at least generally,

ies of sexual activity by the disparity in the penalties imposed.[8]

As justification for the proposition that R. C. 2907.12 (A) only prohibits penetration by an inanimate object, the majority refers to several other state statutory schemes involving sex offenses. It is interesting to note that some of the statutes listed prohibit the penetration of an individual's vagina or anus by *either* an "object" *or* "any part of the body."[10] The observation that can be drawn from including both prohibitions in the same statute is that the primary concern of those legislative bodies is the un-

if not specifically, had in mind when they adopted this section. So if those kind of objects which are not apparatus or instrument can be within the purview of the definition, then I think other objects, including a finger, would likewise be within the definition."

[9]R. C. 2907.05(B) provides that gross sexual imposition is normally a felony of the fourth degree except where the victim is under the age of 13 when it becomes a felony of the third degree. In contrast, R. C. 2907.12(B) provides that, in most instances, felonious sexual penetration is a felony of the first degree. The statute further provides that if the victim is less than 13 years of age and the offender purposely compels the victim to submit by force or threat of force the punishment is life imprisonment.

It is interesting to note that the General Assembly has provided the identical punishment for *both* felonious sexual penetration and rape. See R. C. 2907.02(B). The inference that arises from that apparent similarity is that both statutes are directed at the act of "penetration" although the means to accomplish that result may be different. See the definition of "sexual conduct" incorporated in R. C. 2907.02 and set forth in fn. 7, *supra*.

[10]For example, in Arizona the crime of sexual assault, found in Ariz. Rev. Stat., Section 13-1406 (1978), incorporates the definition of "sexual intercourse" outlined in Section 13-1401(3). The latter statute defines that term as *"penetration* into the penis, vulva or anus *by any part of the body or by any object * * *."* (Emphasis added.) Likewise, in Colorado the offense of sexual assault in the second degree, located in Colo. Rev. Stat., Section 18-3-403 (1975), prohibits conduct classified as a "sexual intrusion." The "intrusion," which would seem analogous to the "insert[ion]" prohibited by R. C. 2907.12, encompasses both foreign objects *and* parts of the body. Section 18-3-401(5) provides, in pertinent part: "'sexual intrusion' means *any* intrusion, however slight, *by any object* or *any part of a person's body,* except the mouth, tongue, or penis, into the genital or anal opening of another person's body * * *." (Emphasis added.)

lawful *penetration* of an individual's body and *not* the various *means* by which that invasion is accomplished.

Keeping the foregoing observation in mind, and construing various portions of R. C. Chapter 2907 in *pari materia,* it is the opinion of this writer that the General Assembly intended to provide for a broad definition of the term "object" in R. C. 2907.12(A) in light of the specific definitions of "sexual conduct" and "sexual contact" embodied in related statutes. To construe that term too narrowly would create an illogical state of affairs whereby the act of the appellee, obviously a form of sexual assault, is not covered by any of the statutory provisions codified in R. C. Chapter 2907.

With that assessment of the legislative policy behind R. C. Chapter 2907 as a foundation, the majority's use of the doctrine of *ejusdem generis* is no longer dispositive of the issue presented in this appeal. Assuming, *arguendo,* that the rule does apply and that "instrument or apparatus" are "specific nouns,"[11] thereby restricting the scope of the word "object" to a specific class, the doctrine cannot operate to distort the legislative objective underlying the overall statutory scheme of which R. C. 2907.12 is merely a segment. The existence of such a rule of statutory interpretation does not warrant a court in confining the operation of a statute within limits narrower than those intended by the lawmakers. *Woodworth* v. *State* (1875), 26 Ohio St. 196, 198; see, also, *Shultz* v. *Cambridge* (1883), 38 Ohio St. 659, 663-664. Furthermore, the applicability of the doctrine to a particular statute is not conclusive as to the meaning of the statutory language when an examination of the "whole law upon the subject" points to a different result:

"The rule of ejusdem generis is far from being one of universal application. It is neither final nor conclusive; there are many cases to which claims of the applicability of the doctrine are denied, and in which general terms in

---

[11]For a discussion of a possible consequence which could result from such a narrow construction, see the opinion of the trial judge set forth in fn. 8, *supra.*

a statute are given meanings beyond the specific terms preceding them.* * *

"* * * If, on consideration of the context and whole law upon the subject, and the purposes sought to be effected, it is apparent that the legislature intended the general words to go beyond the class specially designated, the rule does not apply." 73 American Jurisprudence 2d 408-09, Section 215.

Since *all* the provisions of R. C. Chapter 2907 relating to sexual assaults must be considered in *pari materia* to ascertain the legislative intent behind R. C. 2907.12, and in light of the foregoing limitations on the doctrine of *ejusdem generis*, it is my opinion that the legislature intended to give "object" its normal dictionary definition. In addition, R. C. 1.42 mandates that "[w]ords and phrases shall be read in context and construed according to the rules of grammar and *common usage*." (Emphasis added.)

Adhering to that rule, Black's Law Dictionary (Rev. 4 Ed.) defines an "object" as "[a]nything which comes within the cognizance or scrutiny of the senses, especially anything tangible or visible." Applying that definition to the record I agree with Judge Castle's statement in his dissenting opinion below "that to hold that a human finger is not something which is tangible, visible and stable in form is to ignore the clear unambiguous meaning of the word object."

In conclusion, with the enactment of R. C. 2907.12 the General Assembly intended to criminalize the act of penetrating a victim's vaginal or anal cavity regardless of whether that penetration was accomplished by way of an animate or inanimate object. The purposeful and forceful invasion of the victim's body is in no sense mitigated because the object used to accomplish that instrusion was connected to the body of the appellee.

For the foregoing reasons, I respectfully dissent.

HERBERT, J., concurs in the foregoing dissenting opinion.