**In re SENDERS.**▮

[Cite as *In re Senders* (1996), 110 Ohio App.3d 199.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 69470

Decided April 1, 1996.

*Ulmer & Berne, Steven D. Bell* and *Lynn Rogozinski,* for appellant.

*Betty D. Montgomery,* Attorney General, and *James J. Leo,* Assistant Attorney General, for appellee.

PORTER, Judge.

Appellant Myer Senders appeals from the trial court's order affirming the order of appellee, the Petroleum Underground Storage Tank Release Compensation Board ("the board"), denying the appellant's eligibility to participate in the Financial Assurance Fund administered by the board and obtain compensation for cleaning up a release from appellant's underground storage tank ("UST"). R.C. 3737.88 through 3737.92. The board's denial of reimbursement was based on an administrative rule which provides that recovery from the Fund is contingent upon a finding that the underground storage tank was maintained in compliance with State Fire Marshal regulations. We find no error and affirm for the reasons hereinafter stated.

On July 11, 1989, R.C. 3737.91 became effective, thereby creating Ohio's Petroleum Underground Storage Tank Release Finance Assurance Fund ("the Fund"). The Fund's primary purpose is to "protect Ohio's water resources and reduce pollution by creating a fund to reimburse owners and operators of USTs for the costs of corrective actions in the event of a release of petroleum into the environment and to compensate third parties for bodily injury and/or property damage resulting from such occurrences." *State ex rel. Petroleum Underground Storage Tank Release Comp. Bd. v. Withrow* (1991), 62 Ohio St.3d 111, 579 N.E.2d 705; R.C. 3737.92(B). It is financed in part through tank "assurance" fees required from petroleum UST owners and operators. The board was established to administer the Fund.

The board is required to issue a yearly certificate of Fund coverage to "any responsible person" (UST owners or operators) who has paid the annual assurance fees for his or her tanks and "demonstrated to the board financial responsibility in compliance with the rules adopted by the fire marshal under division (B) of section 3737.882." See R.C. 3737.91(D)(1). A UST is not covered for a release unless, "at the time the release was first suspected or confirmed, a responsible person possessed a valid certificate of coverage * * * for the tank system from which the release occurred." See R.C. 3737.92(D)(1). A "valid certificate of coverage" is not expressly defined in the relevant statutes.

Appellant was the owner of a UST at 15320 Miles Avenue in Cleveland, Ohio. He purchased the property in the mid–1970s with knowledge of the underground tank. The five-thousand-gallon tank was used by the previous owner to store gasoline to service a fleet of trucks. Appellant also used the tank to store gasoline for his vehicles in his remodeling business.

In 1979, appellant sold his remodeling business, but retained ownership of the Miles property and the UST. The purchaser of the remodeling business remained at the Miles address under lease from appellant and used the UST.

In August 1988, the new owner went into bankruptcy and abandoned the location. In 1988, appellant found that the tank still contained gasoline and he removed the dispenser cap from the tank to prevent vandalism. Appellant also began marketing the property.

Appellant took no action to close the tank, according to standards for abandoned tanks set forth in Ohio Adm.Code 1301:7–7–28(E)(9)(c) as promulgated by the State Fire Marshal. He did not remove flammable or combustible liquids, disconnect the suction, inlet gauge, and vent lines, fill the tank with a solid, inert material, and maintain a record of tank size, location, date of abandonment and method used for placing the tank in a safe condition as required by the regulation.

In early 1991, appellant obtained bids from three private contractors to remove the tank. During this process, appellant was told that the tank contained gasoline. In August 1991, appellant, in preparation for selling the Miles property, registered the tank and on September 16, 1991 paid assurance fees which had been owed for the three previous program years (1989, 1990 and 1991). Appellant paid $150 for 1984 and 1990 and made a payment of $300 for 1991. The increased payment of $300 reduced appellant's deductible from $50,000 to $10,000.

Following the payment of fees, the tank was removed from the ground on October 24, 1991. At this time the tank had been out of service for at least three years. Appellant could not determine when the tank was last used. Upon removing the tank from the ground, petroleum contamination was found. A fire

marshal representative was present and directed the remediation. The cleanup was completed and appellant applied to the board to receive compensation from the Fund in the amount of $42,549.16.

On September 29, 1992, appellant's claim was denied by the board's director due to appellant's failure to answer questions regarding the "last in-service date" of the UST. Tanks with a "last in-service date" prior to 1989 are not insurable under the Fund. On April 15, 1993, pursuant to R.C. 3737.92(F) and 119.09, an administrative hearing was held on the claim. On August 16, 1993, the hearing officer issued a report recommending to the board that the claim be denied because, among other reasons, the appellant's application was incomplete. On September 2, 1993, the board rejected the report and recommendation and remanded the claim to the director for further review.

On July 8, 1994, the director issued a second determination denying eligibility for the claim because the UST for which coverage was sought had been improperly abandoned in violation of State Fire Marshal rules and because Ohio Adm.Code 3737–1–07 vests the director with determining the right to payment from the Fund based on compliance with such rules. Appellant waived his rights to an administrative hearing concerning the July 8, 1994 determination.

On August 10, 1994, a second report and recommendation was issued in which the hearing officer recommended that the board affirm the director's July 8, 1994 denial of the claim because of the improperly abandoned status of the UST on the contamination release date. On September 9, 1994, the ten-person board voted unanimously to affirm the July 8, 1994 denial.

On September 15, 1994, appellant appealed to the Cuyahoga County Common Pleas Court pursuant to R.C. 119.12 for a reversal of the board's September 9, 1994 order. On July 20, 1995, the trial court affirmed the board's order denying appellant's right to recover from the Fund. This timely appeal ensued.

The appellant's sole assignment of error and its six subparts state as follows:

"I. The court of common pleas erred in affirming the board's order to deny Senders' Fund eligibility.

"A. Senders is a responsible person and has satisfied the conditions precedent to a determination of eligibility to receive reimbursement from the Fund.

"B. Senders met the requirements of R.C. § 3737.91(D), and possessed a valid certificate of coverage at the time the release was first suspected or confirmed.

"C. The board has no legal authority to determine violations of the state Fire Code.

"D. The state Fire Code does not prohibit the abandonment of USTs.

"E.   The board's rule O.A.C. § 3737–1–07 does not provide any basis for denying Senders' Fund eligibility.

"F.   The board's unofficial policy of denying fund eligibility to 'improperly abandoned' USTs is unlawful and contrary to R.C. § 3737.94."

The standards of review in both the trial court and this court on an R.C. 119.12 administrative appeal were recently set forth in *Diversified Benefit Plans Agency, Inc. v. Duryee* (1995), 101 Ohio App.3d 495, 499, 655 N.E.2d 1353, 1355:

"When reviewing an order of an administrative agency, a common pleas court acts in a 'limited appellate capacity.' *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 339, 343, 587 N.E.2d 835, 838.   In reviewing an order of an administrative agency pursuant to R.C. 119.12, the common pleas court is bound to affirm the agency's order 'if it is supported by reliable, probative, and substantial evidence, and is in accordance with the law.' *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748, 750.   See, also, *Bottoms Up, Inc. v. Ohio Liquor Control Comm.* (1991), 72 Ohio App.3d 726, 728, 596 N.E.2d 475, 476.   The common pleas court ' "must give due deference to the administrative resolution of evidentiary conflicts" ' and therefore must not substitute its judgment for that of the administrative agency. *Hawkins v. Marion Corr. Inst.* (1990), 62 Ohio App.3d 863, 870, 577 N.E.2d 720, 724, quoting *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 111, 17 O.O.3d 65, 67, 407 N.E.2d 1265, 1267.

"An appellate court's review of the trial court's decision is even more limited and requires the appellate court 'to determine only if the trial court has abused its discretion, *i.e.*, being not merely an error of judgment, but perversity of will, passion, prejudice, partiality or moral delinquency.' *Pons*, 66 Ohio St.3d at 621, 614 N.E.2d at 750–751.   Where the common pleas court applies a standard of review greater than that called for in R.C. 119.12, the trial court has abused its discretion. *Bottoms Up, Inc.*, 72 Ohio App.3d at 729–730, 596 N.E.2d at 476–477."

These standards apply as well to appeals involving USTs.   See *Penske Truck Leasing Co. v. Petroleum Underground Storage Tank Release Comp. Bd.* (Sept. 19, 1995), Franklin App. No. 95APE02–226, unreported, at 4–5, 1995 WL 559956.

The board denied coverage to appellant because his tank was abandoned in violation of the State Fire Marshal rule found at Ohio Adm.Code 1301:7–7–28(E)(9)(c).   Appellant does not dispute that the tank was improperly abandoned.   Ohio Adm.Code 3737–1–07 precludes eligibility for reimbursement from the Fund under such circumstances.   Specifically, Ohio Adm.Code 3737–1–07 provides:

"(A) As a prerequisite to determining fund payment of or reimbursement for corrective action costs for an accidental release of petroleum, the director of the

fund will establish eligibility for payment of or reimbursement for such costs on the basis of:

" * * *

"(3) Verification to the director that a responsible person is in compliance with state or federal underground storage tank regulations relating to reports of any known or suspected releases; tank standards and orders of the fire marshal; or, if the responsible person is not in compliance with the state or federal underground storage tank regulations, a showing by the responsible person to the satisfaction of the director of the fund, the presence of unique and special circumstances which warrant a finding of eligibility."

Appellant argues that Ohio Adm.Code 3737–1–07 clearly conflicts with R.C. 3737.90 *et seq.* or is unreasonable. Appellant claims that the board was without jurisdiction to determine that he was in violation of Ohio Adm.Code 1301:7-7-28(E)(9)(c), which deals with the precautions that must be taken when a UST is out of use for over a year. As recently stated by the Ohio Supreme Court, "[a] properly promulgated administrative rule has the force and effect of law unless it is in clear conflict with the statute or is unreasonable." *Chicago Pacific Corp. v. Limbach* (1992), 65 Ohio St.3d 432, 435, 605 N.E.2d 8, 11. See, also, *Doyle v. Ohio Bur. of Motor Vehicles* (1990), 51 Ohio St.3d 46, 554 N.E.2d 97.

The validity of the board's administrative rule governing eligibility for Fund reimbursement draws its authority from R.C. 3737.90(B)(2), which provides:

"The board may:

" * * *

"(2) In accordance with Chapter 119. of the Revised Code, adopt, amend, and rescind such other rules as are necessary or appropriate to implement and administer sections 3737.90 to 3737.98 of the Revised Code * * *. The rules adopted under division (B)(2) of this section shall be consistent with * * * 42 U.S.C.A. 6991b, as amended, and regulations adopted under it."

The General Assembly vested the board with broad power to promulgate rules necessary to administer this complex statute. It directed that the board's rules be consistent with Section 6991b, Title 42, U.S.Code, federal legislation which sets nationwide standards for the environmentally responsible ownership and operation of USTs. The federal legislation allows each state to submit and operate its own UST program provided that the state's standards are "no less stringent" than federal standards applicable in the absence of state action. See Section 6991c(b)(1). The State Fire Marshal's tank standards have counterparts in federal regulations adopted under Section 6991b, Title 42, U.S.Code. This allows the state to operate its tank program in place of the federal program.

The State Fire Marshal is authorized to issue citations and orders to enforce such rules and pursue penalties up to $10,000 per day, per violation. R.C. 3737.882(C). Although the board has no jurisdiction to pursue penalties for violations of State Fire Marshal rules, it contends that it has authority to determine whether an individual's tanks are in compliance with those rules for purposes of determining eligibility for Fund reimbursement.

As a prerequisite to Fund eligibility, R.C. 3737.92(D)(1) requires possession of a "valid" certificate of coverage, but the statute does not define "valid." The board argues that Ohio Adm.Code 3737-1-07 supplies the missing definition by requiring, among other things, compliance with State Fire Marshal rules to validate a certificate of coverage. The board contends that the rule follows the statutory scheme and achieves the reasonable result that where persons violate state laws concerning the responsible ownership and operation of USTs, they may not collect compensation to clean up contamination caused as a result of their own violations.

Appellant argues that the validity of a certificate of coverage should not depend upon the status of the tank for which it is issued. Under appellant's theory, a valid certificate is one which merely states the amount of coverage and time period for coverage and is possessed by a responsible person who has paid any supplemental fees assessed by the Fund. The net effect of appellant's argument is that he has a certificate of coverage, and therefore, it must be valid. We do not find this argument persuasive.

The result which appellant urges this court to adopt in this case would create a situation where the failure of the fire marshal to determine that a tank was improperly abandoned would estop the board from denying fund eligibility. This result does not square with the general rule that principles of estoppel do not apply against the state or its agencies in the exercise of a governmental function. *Ohio State Bd. of Pharmacy v. Frantz* (1990), 51 Ohio St.3d 143, 146, 555 N.E.2d 630, 633–634; *McAuliffe v. Bd. of Pub. Emp. Retirement Sys. of Ohio* (1994), 93 Ohio App.3d 353, 360, 638 N.E.2d 617, 621–622. Under the appellant's argument, an owner of an UST who allows an improperly abandoned tank to leak into the environment could not be denied Fund eligibility in the absence of a notice of violation from the fire marshal.

Statutes covering the same subject matter should be read *in pari materia* to produce a consistent and reasonable result. *Ohio v. Leichty* (1993), 68 Ohio St.3d 37, 39, 623 N.E.2d 48, 49–50; *State ex rel. Cunningham v. Indus. Comm.* (1987), 30 Ohio St.3d 73, 79, 30 OBR 176, 181–182, 506 N.E.2d 1179, 1183–1184. It would be an inconsistent and unreasonable result if tank owners and operators could disregard Ohio UST regulations and, in doing so, collect money from the Fund for a petroleum release which could have been prevented by following the

procedures. There is no factual dispute that appellant has failed to observe the requirements for out of use or abandoned USTs under the fire marshal rules. The board's conclusion that its regulation does not conflict with the statute is both consistent and reasonable. We will not second-guess it.

There are other sections of the statutes which are well served by the board's construction. R.C. 3737.91(D)(1)(a) provides:

"The board shall issue a certificate of coverage to any responsible person who has complied with both of the following:

"(a) Paid the fee assessed under [R.C. 3737.91(B) ] * * *."

The fee assessed under R.C. 3737.91(B) applies only to USTs for which a "responsible person is required to demonstrate financial responsibility by rules adopted by the fire marshal under division (B) of section 3737.882 of the Revised Code." State Fire Marshal rules do not require a demonstration of financial responsibility for USTs which have been properly closed. State Fire Marshal rules also provide that a tank shall be removed from the ground or properly closed in place after it has been out of use for more than a year. See Ohio Adm.Code 1301:7-7-28(E)(9)(c).

The board argues that a reading of the statutes *in pari materia* with the rules leads to the conclusion that tanks out of use for more than one year must be removed or properly closed in place (Ohio Adm.Code 1301:7-7-28[E][9][c] ); once removed or properly closed, financial responsibility is no longer required by State Fire Marshal rules (Ohio Adm.Code 1301:7-9-05[x] ); once financial responsibility is no longer required by State Fire Marshal rules, financial assurance fees are not to be assessed (R.C. 3737.91[B] ); and the board has no statutory jurisdiction to offer compensation for a release from such a tank, which obviously has been secured from a hazardous release. The board argues that if it were to provide coverage for tanks which have not, but should have been properly closed, then it would be encouraging a violation of the law by providing coverage for tanks which, according to State Fire Marshal rules, should have been removed from the ground or properly closed in place. In short, the board contends it would be allowing coverage for a tank over which it has no coverage jurisdiction.

Appellant also asserts that if the General Assembly desired to exclude owners of "improperly abandoned tanks from paying assurance fees, then it could easily have changed the requirements of R.C. 3737.91(B)." That statement ignores the fact that the legislature did in fact qualify the types of tanks which may be eligible for Fund coverage in its directive that fees are only to be issued for USTs for which a "responsible person is required to demonstrate financial responsibility by rules adopted by the fire marshal under division (B) of section 3737.882 of the Revised Code." R.C. 3737.91(B). The General Assembly delegated responsibili-

ty to the State Fire Marshal to determine which tanks must obtain financial responsibility and the General Assembly thereby requires the board to review State Fire Marshal rules to determine which tanks it must assess fees for and which tanks it has jurisdiction to cover under the Fund.

Appellant's position unfortunately would condone the violation of state law. However, the Supreme Court has taken the position that legislation within R.C. Title 37 should be given a liberal construction to achieve the objectives of protecting the health, safety and welfare of people in this state even when a liberal construction will result in penal sanctions against a private individual. *Pizza v. Sunset Fireworks Co., Inc.* (1986), 25 Ohio St.3d 1, 4, 25 OBR 1, 3–4, 494 N.E.2d 1115, 1118. Appellant's position is contrary to the objective of protecting the health, safety and welfare of the state's citizens; the board's interpretation is consistent with those principles. A strong presumption exists in favor of statutory construction that avoids absurd results. *State ex rel. Bolin v. Ohio Environmental Protection Agency* (1992), 82 Ohio App.3d 410, 413, 612 N.E.2d 498, 499–500.

Appellant's own testimony revealed that his tank had been out of use for more than a year without being properly closed in accordance with State Fire Marshal rules and that it was therefore improperly abandoned.

The version of Ohio Adm.Code 1301:7–7–28(E)(9)(c) effective at the time appellant's petroleum release was discovered provides that tanks out of use for over one year must be removed or properly closed in place and specifically states:

"(9) Abandonment of tanks: A permit shall be obtained from the fire official to remove, abandon, place temporarily out of service or otherwise dispose of any underground storage tank containing flammable or combustible liquids. When such a permit is not required from the local fire official the permit shall be obtained from the fire marshal.

" * * *

"(c) Any tank which has been abandoned for a period of one year shall be removed from the property in a manner approved by the fire official and the site restored in an approved manner. When the fire official determines that the removal of the tank is not necessary, he may permit the tank to be abandoned in place in accordance with API 1604 listed in rule 1301:7–7–34 of the Administrative Code, and including the following methods:

"(i) Remove all flammable or combustible liquid from the tank and all connecting lines.

"(ii) Disconnect the suction, inlet, gauge, and vent lines.

"(iii) Fill the tank completely with an inert solid material. Cap remaining underground piping.

"(iv) Keep a record of tank size, location, date of abandonment, and method used for placing the abandoned tank in a safe condition."

The record reveals that in 1988 appellant removed the dispenser cap from the tank and it remained disabled and out of use thereafter. Appellant conceded at the hearing that the tank contained over one hundred gallons of gasoline. Nothing was done to properly secure the tank under the provisions of Ohio Adm.Code 1301:7-7-27(E)(9)(c) until the tank was removed in 1991 and the release was discovered. Appellant's testimony revealed that he failed to follow specific aspects of Ohio Adm.Code 1301:7-7-28(E)(9)(b).

Ohio Adm.Code 1301:7-7-28(E)(9)(b) provides that ninety days of non-use is a triggering event which mandates that steps be taken to safeguard a tank. Ohio Adm.Code 1301:7-7-28(E)(9)(c) provides:

"Any tank not used for a period of ninety days shall be properly safeguarded or removed in a manner approved by the fire official."

The word "abandoned" is not defined in Ohio Adm.Code 1301:7-7-2, but, given the time-related requirement within subsection (b) of Ohio Adm.Code 1301:7-7-28(E)(9), it may reasonably be inferred that any tank which has been "abandoned" for a period of one year shall be removed or properly closed in place and that the legislature intended to require removal or proper closure of tanks when they have been out of use for one year.

In one case, *Hamilton v. Harville* (1989), 63 Ohio App.3d 27, 577 N.E.2d 1125, the court held that the duty within Ohio Adm.Code 1301:7-7-28(E)(9)(c) to close a tank is not triggered by non-use but is triggered by an intent to discard it. *Id.* at 30, 577 N.E.2d at 1126-1127. In *Hamilton,* the court focused on the word "abandoned" but did not define that word in the context of the UST legislation in which it appeared. Specifically, the court did not review subsections of Ohio Adm.Code 1301:7-7-28(e), but applied a definition of "abandoned" stemming from case law, *Davis v. Suggs* (1983), 10 Ohio App.3d 50, 10 OBR 59, 460 N.E.2d 665, concerning ownership rights in discarded personal property and held that the tank owner's mental intent to abandon is the triggering event which requires removal.

Under the *Hamilton* theory, a tank may remain in the ground indefinitely without the applicable safeguards of Ohio Adm.Code 1301:7-7-28(E)(9)(c)(i) through (iv) merely because a tank owner has not yet manifested an intent to discard it. However, the ninety-day provision of Ohio Adm.Code 1301:7-7-28(E)(9)(b) demonstrates that it is not the owner's state of mind which creates a

danger to the environment, but the status of the tank over time which creates a hazard.

We are not persuaded by *Hamilton*, which was a criminal case dealing with a municipal fire code. Instead, we construe the definition of the word "abandoned," within the context of Ohio Adm. Code 1301:7–7–28(E)(9)(c). In *State v. Hooper* (1979), 57 Ohio St.2d 87, 11 O.O.3d 250, 386 N.E.2d 1348, the Ohio Supreme Court asserted:

" 'The primary purpose of the judiciary in the interpretation or construction of statutes is to * * * ascertain the legislative will.' *Henry v. Central Natl. Bank* (1968), 16 Ohio St.2d 16 [45 O.O.2d 262, 242 N.E.2d 342], paragraph two of the syllabus; 2A Sutherland on Statutory Construction 15, Section 45.05, and cases cited therein. Moreover, where statutory language clearly expresses that legislative intent, that language will not be construed by the courts. *Provident Bank v. Wood* (1973), 36 Ohio St.2d 101, 106 [65 O.O.2d 296, 298–299, 304 N.E.2d 378, 381–382]; *Katz v. Dept. of Liquor Control* (1957), 166 Ohio St. [229], 231 [2 O.O.2d 54, 55, 141 N.E.2d 294, 295–296]. Words are not absolutes, however. Because their meanings may vary according to context, custom and usage (*American Oil Co. v. State Highway Board* [1962], 122 Vt. 496, 177 A.2d 358), statutory language cannot be declared clear or ambiguous until the context in which it appears or the connotation which it may carry are taken into consideration." *Hooper*, 57 Ohio St.2d at 88, 11 O.O.3d at 251, 386 N.E.2d at 1349.

Our review of the decision of the board is limited. In an administrative appeal, pursuant to R.C. 119.12, the standard of review for this court is more limited than the common pleas court because a court of appeals does not determine the weight to be given the evidence. *Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn.* (1992), 63 Ohio St.3d 705, 707, 590 N.E.2d 1240, 1241. The standard of review upon factual issues is whether the common pleas court abused its discretion in finding the administrative order was or was not supported by reliable, probative and substantial evidence. When the issue is a question of law, this court makes its own determination of the law to be applied to the facts found by the agency. *Franklin Cty. Bd. of Commrs. v. State Emp. Relations Bd.* (1993), 92 Ohio App.3d 585, 588, 636 N.E.2d 407, 409–410.

Furthermore, a reviewing court must give deference to an administrative agency's interpretation of its own rules and regulations where the interpretation is consistent with the statutory law and the plain language of the rules. *State ex rel. Celebrezze v. Natl. Lime & Stone Co.* (1994), 68 Ohio St.3d 377, 382, 627 N.E.2d 538, 542; *Jones Metal Products Co. v. Walker* (1972), 29 Ohio St.2d 173, 181, 58 O.O.2d 393, 397–398, 281 N.E.2d 1, 8; *Cuyahoga Cty. Bd. of Commrs. v. Ford* (1987), 35 Ohio App.3d 88, 92, 520 N.E.2d 1, 4–5.

■ Upon a review of this rule, we conclude that appellant's duty to close the tank, per Ohio Adm.Code 1301:7–7–28(E)(9)(c), arose one year from last use of the tank. Since the tank was last used sometime in 1988, it should have been closed or removed or properly closed in place sometime in 1989 and the October 24, 1991 removal date was well beyond the legislative time limit.

Appellant cites provisions of Ohio Adm.Code 1301:7–9–12, which it states are analogous to Ohio Adm.Code 1301:7–7–28(E)(9), and it asserts that "[c]learly [its] UST was 'out of service' * * *" as that term is defined by Ohio Adm.Code 1301:7–9–12(B)(1). Appellant then goes on to assert that provisions of Ohio Adm.Code 1301:7–9–12 "do not require a UST to be removed from the ground 365 days after use is discontinued, as the Board argues."

Ohio Adm.Code 1301:7–9–12 is not applicable to the case at hand because that rule became effective after the petroleum release from appellant's tank had been suspected or confirmed, and legislation is presumed to take effect prospectively. *Kiser v. Coleman* (1986), 28 Ohio St.3d 259, 262, 28 OBR 337, 339–340, 503 N.E.2d 753, 755–756. However, as appellant suggests, Ohio Adm.Code 1301:7–9–12 is analogous to Ohio Adm.Code 1301:7–7–28(E)(9) and will be considered in the context of this case.

Like Ohio Adm.Code 1301:7–7–28(E)(9)(c), Ohio Adm.Code 1301:7–9–12 provides that USTs are not intended to remain out of use for more than a year without being removed or properly closed in place. Thus, appellant's assertion that a tank may be out of use for over a year and may remain in the ground is true. However, that assertion neglects the fact that such tanks must be properly closed in place (*i.e.*, drained of petroleum, filled with an inert substance, etc.). And such closure procedures were never followed for the tank in question.

Ohio Adm.Code 1301:7–9–12(G)(2) provides that " '[i]f an operating UST system is out of service for more than twelve months, the owners or operators shall permanently remove or permanently abandon the UST system in accordance with the requirements set forth in this rule * * *.' " Elsewhere, Ohio Adm.Code 1301:7–9–12(H) provides a very specific set of procedures to permanently and properly abandon a tank in place, but they were not followed in this case.

■ Both Ohio Adm.Code 1301:7–7–28(E)(9) and 1301:7–9–12 require that persons whose tanks have been out of use for more than a year and are still in the ground have only three options: (1) remove the tank from the ground; (2) keep the tank in the ground and properly secure the tank in place; or (3) replace the tank with a new UST system pursuant to Ohio Adm.Code 1301:7–9–06. Those options must be exercised within a year after the tank's last use. Appellant's conduct of leaving the partially filled tank in the ground without following the procedures for closure (*i.e.*, draining it of petroleum, filling it with

an inert substance, etc.) was not a legal option, and runs contrary to the purpose of the Ohio UST regulations.

Appellant's failure to follow the prescribed procedures led the board to the conclusion that he was not eligible to participate in the Fund. We find no mistake of law or abuse of discretion in the board's ruling or the trial court's affirmance thereof.

Appellant's sole assignment of error is overruled.

*Judgment affirmed.*

SPELLACY, C.J., and PATRICIA ANN BLACKMON, J., concur.