OPINION
{¶ 1} Defendant-appellant, Joseph Palmer, appeals his conviction for multiple felony sexual offenses based upon allegations that he molested three minor girls at his home.
 {¶ 2} A Fayette County Court of Common Pleas jury found appellant guilty of multiple counts of gross sexual imposition, felonious sexual penetration, rape, and unlawful sexual conduct with a minor. The trial court imposed a sentence, and found appellant to be a sexual predator. *Page 2 
 {¶ 3} Appellant filed this appeal, setting forth two assignments of error for our review. Both of appellant's assignments of error challenge the sufficiency of the evidence, and therefore, they will be addressed together.
 {¶ 4} Assignment of Error No. 1:
 {¶ 5} "THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN OVERRULING APPELLANT'S CRIMINAL RULE 29 MOTION AT THE CLOSE OF THE STATE'S CASE AND AT THE CONCLUSION OF ALL THE EVIDENCE."
 {¶ 6} Assignment of Error No. 2:
 {¶ 7} "THE JURY'S VERDICT WAS NOT SUPPORTED BY EVIDENCE SUFFICIENT TO ESTABLISH THAT APPELLANT COMMITTED EACH AND EVERY ELEMENT OF EACH AND EVERY CHARGE AGAINST HIM."
 {¶ 8} When reviewing the trial court's denial of a motion for acquittal under Crim. R. 29, this court applies the same test as it would in reviewing a challenge based upon the sufficiency of the evidence to support a conviction. State v. Rucker, Butler App. No. CA2001-04-076, 2002-Ohio-172. The function of an appellate court when reviewing the sufficiency of the evidence underlying a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. Id., citing State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.State v. Hancock, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 34.
 {¶ 9} The charged offenses in this case span from August 1988 to July 1999 for the first alleged victim, "A. D.," from January 1994 to through January 1996 for the second alleged victim, "M.M.," and one count for the time period from January 1998 to January 1999 for the *Page 3 
third alleged victim "N.B."
 {¶ 10} The evidence, which will be discussed more thoroughly below, involved allegations of touching erogenous zones with the hands, digital penetration of the vaginal cavity of one victim, cunnilingus involving one victim, and penile-vaginal intercourse involving one victim. The charges would be based upon the statutory language applicable to the acts at the time the acts allegedly occurred and upon the age of the alleged victim at the time of the activity. In other words, conduct that would constitute rape under the current statute was charged under a different statute because "sexual conduct" was more narrowly defined at the time some of the offenses were committed and did not include digital penetration.
 {¶ 11} The gross sexual imposition statute states that no person shall have sexual contact with another * * * when the other person is less than thirteen years of age, whether or not the offender knows the age of the person. See R.C. 2907.05(A)(4).[1] "Sexual contact" is defined as any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or the person is a female, a breast, for the purpose of sexually arousing or gratifying either person. See R.C. 2907.01(B).
 {¶ 12} The statute on the offense of rape prohibits a person from engaging in sexual conduct with another, not a spouse * * *, when the other person is less than thirteen years of age, whether or not the offender knows the age of the person. R.C. 2907.02(A)(1)(b).
 {¶ 13} "Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse. See R.C. 2907.01(A). *Page 4 
 {¶ 14} We note that "sexual conduct" was previously defined during some of the time frame at issue as vaginal intercourse between a male and female, and anal intercourse, fellatio, and cunnilingus between persons regardless of sex * * *. See older versions of R.C. 2907.01.
 {¶ 15} "Felonious sexual penetration," which was defined by statute in existence during part of the time frame at issue, stated that no person, without privilege to do so, shall insert any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies: * * * the other person is less than 13 years of age, whether or not the offender knows the age of the other person. R.C. 2907.12, since repealed.[2]
 {¶ 16} Corruption of a minor, and currently, unlawful sexual conduct with a minor under R.C. 2907.04, stated that no person who is 18 years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is 13 years of age or older but less than 16 years of age, or the offender is reckless in that regard.
 {¶ 17} Appellant does not argue that the actions alleged do not fit within any particular statutory language, but rather, appellant contends under both assignments of error that the convictions were erroneous because evidence involved general allegations of activity and were not specific to each count.
 {¶ 18} Appellant cites State v. Warren, 168 Ohio App.3d 288,2006-Ohio-4104, ¶ 20, for the proposition that a victim's estimate of the number of times a certain act took place was *Page 5 
not sufficient to support the offender's convictions because the appellate court cannot accept the "numerical estimate which is unconnected to individual, distinguishable incidents." See also,Valentine v. Konteh (C.A.6, 2005), 395 F.3d 626 (jury could not consider each criminal count because they were not connected to distinguishable incidents).
 {¶ 19} We are also mindful that many child victims are unable to remember exact dates and times, particularly where the crimes involved a repeated course of conduct over an extended period of time. State v.Mundy (1994), 99 Ohio App.3d 275, 296. "The problem is compounded where the accused and the victim are related or reside in the same household, situations which often facilitate an extended period of abuse."State v. Robinette (Feb. 27, 1987), Morrow App. No. CA-652. An "allowance for reasonableness and inexactitude must be made for such cases considering the circumstances." Id.
 {¶ 20} The following evidence was presented to the jury at trial. A.D., born in August 1984, testified that she is related to appellant's wife, and that in 1988 she began spending every weekend and many summers with appellant and his wife. Appellant's wife verified that A.D. began spending weekends with them in July 1988. Both A.D. and the wife testified that appellant and his wife lived initially in Jeffersonville, but moved to a Washington Court House trailer park in 1989.
 {¶ 21} A.D. stated that she slept in the same bed as appellant and his wife when they lived in Jeffersonville. A.D. testified that after the wife fell asleep, appellant put his hands down her pants, rubbed the outside of and inserted his fingers inside of her "vagina." She testified that this would happen "every time I would go mostly." A.D. testified that appellant told her that it was okay, as that is how "grandpas" checked little girls.
 {¶ 22} A.D. testified that appellant continued to put his hands down her pants to rub the inside and outside of her "vagina" when appellant and his wife moved to the trailer park and this activity would occur while she was sitting with appellant in the living room. A.D. *Page 6 
testified that the wife sometimes was present or would enter the living room when the acts were occurring, and she remembered the wife sometimes telling appellant that "it was enough." Again, A.D. testified that this occurred almost every time she was there, which was every weekend, until she was nine years of age.
 {¶ 23} A.D. stated that she was between the ages of nine and ten when appellant started coming into the room where she was sleeping at night. A.D. testified that appellant would perform the same acts as previously described with his hands. A.D. stated that appellant also began engaging in cunnilingus, and had vaginal intercourse with her. A.D. testified that all three acts would occur whenever he entered her room at night, and this continued until she was 15 years of age. A.D. testified that she no longer visited every weekend but stayed every other weekend with appellant and his wife when she was either twelve or 14 years of age.
 {¶ 24} When asked why the sexual acts stopped at the age of 15, A.D. indicated that she became pregnant by someone else, and appellant acted differently thereafter. A.D. explained that appellant closed the savings account he opened for her, stopped buying her things, no longer took her shopping, and stated that he wished things were the way they used to be.
 {¶ 25} A.D.'s uncle testified that appellant's wife called him when he lived out of state in 1994, expressing concerns about an incident. Appellant's wife testified that she told A.D.'s uncle about an incident wherein she awoke to find appellant passed out near A.D., but she was only concerned that appellant may have hurt A.D. when he fell. Appellant's wife testified, in contrast to A.D.'s testimony, that A.D. switched to every other weekend visits at six years of age and spent fewer summers at their home.
 {¶ 26} A.D.'s uncle testified that he and his family moved back to Ohio and in with appellant and his wife for a couple of months in late 1995. He indicated that he witnessed no *Page 7 
sexual behavior. A.D. admitted on cross-examination that no sexual activity took place when her uncle's family was staying with appellant. The prosecution withdrew two criminal counts pertaining to acts allegedly perpetrated upon A.D. for November and December 1995.
 {¶ 27} A.D.'s father testified that he stayed periodically with appellant and the wife, also his mother, and that he was an alcoholic. A.D.'s father testified to an incident in which he entered appellant's residence intoxicated at 2:00 a.m. and observed appellant in A.D.'s room. He said A.D. would have been approximately nine years old. A.D.'s father testified that he informed appellant's wife about the incident and told her he would kill appellant if it happened again. Appellant's wife denied that A.D.'s father ever mentioned such an incident to her.
 {¶ 28} Another female witness testified that she became A.D.'s babysitter because her stepmother at the time was related to appellant. The witness indicated that she served as the baby-sitter at appellant's residence in the summer of 1993. She testified that she spent every night in the same bedroom with A.D. and witnessed no inappropriate behavior. The jury returned a verdict of not guilty on the criminal counts that pertained to A.D. for June, July and August of 1993.
 {¶ 29} Appellant's wife acknowledged that she told A.D. in 2006 that appellant was "sorry" about what had occurred, but the wife told the jury that appellant never made that statement and she had lied about it to induce A.D. to resume communications with her.
 {¶ 30} Appellant's defense in this case centered on the contention that there was a lack of evidence that any abuse took place. Appellant's witnesses, including his wife, indicated that they witnessed no untoward activity between appellant and A.D., that A.D. acted inconsistently with the truth of such allegations when she requested that appellant and his wife watch her children, when she contemplated asking them to assume her custody during her teenage years, when she visited often and acted very lovingly toward appellant *Page 8 
even shortly before the allegations became public.
 {¶ 31} The indictment in this case contained one criminal count for each month of a year from August 1988 to July 1999 in reference to acts alleging sexual activity perpetrated against A.D. As we previously noted, the name of the offense changed depending upon the pertinent statutory language at the time and based on A.D.'s age. We have already indicated that the state dismissed two counts during trial, and the jury returned a not guilty verdict on three counts based upon the evidence presented.
 {¶ 32} We have reviewed the record under the applicable standard for a Crim. R. 29 motion and sufficiency challenge. We are cognizant of appellant's arguments regarding the specificity of the evidence in relation to each criminal count, and find them not well-taken.
 {¶ 33} The trial court instructed the jury to consider each count and the evidence applicable to each count separately and state its findings as to each count uninfluenced by the verdict for any other account. A jury is presumed to follow the instructions given to it by the trial judge. State v. Stallings, 89 Ohio St.3d 280, 286, 2000-Ohio-164.
 {¶ 34} A.D. testified about the specific sexual activity that occurred and where and when the types of sexual activity changed. A.D. testified that specific sexual acts occurred almost every time she visited appellant, and indicated that she visited every weekend for several years and every other weekend for several more years. Appellant was charged with only one criminal count for each month of each year in which A.D. provided testimony that sexual activity occurred, i.e., when she began the visits in August 1988 through the month in which sexual activity stopped at the age of 15 in July 1999.
 {¶ 35} Further, the jury considered the evidence and counts separately as it did not sustain three criminal counts related to months in which A.D. admitted that no sexual activity took place because the babysitter slept in her room. Accordingly, we find that any rational trier of fact could have found beyond a reasonable doubt the essential elements of the *Page 9 
crimes in relation to A.D. on each separate count.
 {¶ 36} In regard to the second alleged victim, M.M. testified that she is younger than but related to A.D. She testified that she was four years of age when she began accompanying A.D. on her weekend stays with appellant and his wife. M.M. testified that she stayed only one or two weekends a month at the Washington Court House trailer park when she visited from 1994 through approximately 1998. During that time, M.M. indicated that appellant's wife would give her a bath and place her wrapped only with a towel onto appellant's lap. M.M. stated that appellant would touch her "private areas" with his hands while she sat on his lap. Appellant's wife testified that M.M. visited much less often and her visits were very sporadic. Appellant's wife stated that she never bathed M.M. and washed her hair only one time.
 {¶ 37} The indictment in reference to this victim consisted of 25 counts of gross sexual imposition encompassing one allegation of sexual contact each month from January 1994 through January 1996. As we previously mentioned, A.D.'s uncle testified that he and his family moved in with appellant and appellant's wife for a couple of months in late 1995. The jury found appellant guilty of 23 counts of gross sexual imposition in relation to M.M. and found appellant not guilty of the two counts pertaining to November and December 1995.
 {¶ 38} After reviewing the evidence under the appropriate standard for a Crim. R. 29 motion and the sufficiency of the evidence we find that any rational trier of fact could have found on each count the essential elements of the crimes in regard to M.M. beyond a reasonable doubt.
 {¶ 39} The third alleged victim, N.B., testified that she was A.D.'s friend who spent an overnight with A.D. at the home of appellant and his wife. N.B. testified that she was approximately nine or ten years of age when she awoke to find appellant sitting on the bed she shared with A.D. N.B testified that appellant was moving his hand up her leg to her inner *Page 10 
thigh under the bedcovers. She indicated that appellant ran out of the room when she awoke. N.B. testified that she told A.D. what had just happened and A.D. told her not to worry about it and go back to sleep. The jury found appellant guilty of one count of gross sexual imposition for one incident of sexual contact with N.B during a twelve-month period from January 1998 to January 1999. Appellant's wife testified that N.B. visited, but never spent the night at her home.
 {¶ 40} Appellant argues that there was insufficient evidence for the jury to find that appellant touched N.B. for the purpose of sexually arousing or gratifying either person, as is required for gross sexual imposition.
 {¶ 41} While the purpose of sexual arousal or gratification is an essential element of gross sexual imposition, there is no requirement that there be direct testimony regarding sexual arousal or gratification. In re Anderson (1996), 116 Ohio App.3d 441, 444. Whether touching was performed for the purpose of sexual arousal or gratification is a question of fact to be inferred from the type, nature, and circumstances of the contact. Id. at 443-444.
 {¶ 42} After reviewing the evidence under the appropriate standard for a Crim. R. 29 motion and the sufficiency of the evidence we find that any rational trier of fact could have found beyond a reasonable doubt the essential elements of the crime of gross sexual imposition, including whether the touching was performed for the purpose of sexual arousal or gratification of either person.
 {¶ 43} Appellant's first and second assignments of error are overruled.
 {¶ 44} Judgment affirmed.
BRESSLER and POWELL, JJ., concur.
[1] We note that the gross sexual imposition statute was amended so that the division of the statute involving a victim under the age of 13 is now found in R.C. 2907.05(A)(4).
[2] The felonious sexual penetration statute did not contain and was amended to include the language involving insertion of "any part of the body." Before the statute was amended to reflect this language, the Ohio Supreme Court had ruled that a finger was not an object within purview of the felonious sexual felonious statute. See State v. Hooper (1979),57 Ohio St.2d 87. *Page 1