OPINION
This is an appeal from an order of the court of common pleas affirming an order of The Petroleum Underground Storage Tank Release Compensation Board ("Board") denying two claims for compensation.
In 1995, Amoco Oil Company ("Amoco") discovered that releases had occurred from two of its underground storage tanks in Miamisburg and Westerville. In August of 1997, Amoco applied to the Board for reimbursement of its costs of clean-up. The Board denied the applications because they were not filed on or before January 1, 1997, or within one year after the release was reported to the State Fire Marshal, as an administrative rule promulgated by the Board requires. The denials were appealed to the court of common pleas, which affirmed the Board. This appeal by Amoco followed.
Amoco does not set up a specific assignment of error in its brief, as App.R. 16(A)(3) requires. Nevertheless, we take the error that it assigns to be that the trial court erred when it denied Amoco's request to reverse the Board's order because the Board is without authority to require that claims be presented on or before the cut-off dates prescribed by its rule.
There is no dispute regarding the facts underlying Amoco's claims for reimbursement, including the fact that they were not timely filed in relation to the Board's rule. The dispute presented is on issues of law. Therefore, our review is de novo.Hartzog v. Ohio State University (1985), 27 Ohio App.3d 214.
R.C. 3737.91 establishes a petroleum underground storage tank financial assistance fund ("fund") administered by the Board for reimbursement of costs incurred by covered persons or organizations in cleaning up spills and leaks of petroleum from underground storage tanks. Pursuant to R.C. 3737.91(D)(1), the Board must issue a certificate of coverage to any person who pays the fee required by the Board, demonstrates financial responsibility, and certifies that he is in compliance with the fire marshal's regulations.
Five criteria are established by R.C. 3737.92(D) for payment by the fund of any claim for reimbursement:
 1. A valid certificate of coverage for the underground storage tanks at the time the releases were first suspected or confirmed.
 2. Registration of the underground storage tanks in accordance with rules adopted by the state fire marshal at the time the releases were first suspected or confirmed.
 3. Compliance with all orders issued by the state fire marshal under O.R.C. §§ 3737.88 and 3737.882.
 4. Demonstration of financial responsibility for the deductible amount applicable under O.R.C. § 3737.91.
 5. No evidence of any false attestation contained on the registration application.
R.C. 3737.90(B)(2) authorizes the Board to "adopt, amend, and rescind such other rules as are necessary or appropriate to implement and administer" the fund and claims for reimbursement, including, inter alia, "rules establishing priorities for the payment of claims" and "rules providing for the payment of any such claims in installments, when appropriate." Pursuant to this authority, the Board adopted Ohio Adm. Code 3737-1-07(A), which states:
 As a prerequisite to determining fund payment of or reimbursement for corrective action costs for an accidental release of petroleum, the director of the fund shall issue a determination of eligibility for payment of or reimbursement for such costs where all of the following conditions are established:
 1. For releases which were required to be reported to the fire marshal or a delegated authority prior to January 1, 1996, receipt, on or before January 1, 1997, of a completed application for eligibility which has been made by a responsible person; and, for releases which are or were to be reported to the fire marshal or a delegated authority on or after January 1, 1996, receipt within one year from the date the release is or was required to be reported to the fire marshal or a delegated authority of a completed application for eligibility which has been made by a responsible person.
Amoco argues that the Board acted outside its statutory rulemaking authority when it adopted the one-year reporting deadline because the deadline is neither necessary nor appropriate to the Board's statutory charge. The Board contends that the regulation is within the authority it is delegated by statute.
The statutory charge granted the Board is set out in R.C.3737.94(A), which states:
 It is hereby declared to be the public policy of the state through the operations of [the Board] . . . to contribute toward one or more of the following: to preserve and protect the water resources of the state and to prevent, abate, or control the pollution of water resources, particularly ground water, for the protection and preservation of the public health, safety, convenience, and welfare, to assist in the financing of repair and replacement of petroleum underground storage tanks and to improve property damaged by any petroleum releases from those tanks, and to preserve jobs and employment opportunities or improve the economic welfare of the people of the state.
In general, administrative rules may not add to or subtract from the legislative enactment from which the authority to promulgate them is drawn. Cent. Ohio Joint Vocational SchoolDist. Bd. Of Edn. v. Ohio Bur. of Emp. Serv. (1986), 21 Ohio St.3d 5. In that event the rule creates a clear conflict with the statute, which renders it a nullity. Franklin Iron Metal Corp.v. Ohio Petroleum Underground Storage Tank Release CompensationBoard (1996), 117 Ohio App.3d 509.
In Franklin, supra, this court held that a regulation of the Board which required applicants for coverage to demonstrate that they satisfied assurability criteria by answering questions in a form provided by the Board was in clear conflict with R.C.3737.91(D)(1) because the statute requires applicants for coverage only to certify that they are in compliance with those criteria, and states that upon such certification the Board "shall" issue a certificate of coverage. The mandatory character of the statute prevented the Board from denying coverage when the statutory criteria are satisfied, therefore.
Here, we are concerned not with issuance of a certificate of coverage but with payment of claims, which is not mandated by the statute. The applicant must demonstrate certain facts, and the Board is given some discretion in determining whether any evidence of "false attestation" is present. Nevertheless, none of those statutory criteria impose a time requirement upon the filing of a claim for reimbursement.
The Board argues that the one-year time requirement for filing a claim is, nevertheless, "necessary or appropriate to implement and administer" the fund because it discourages or prevents the presentation of stale claims. Such claims are more difficult to verify and may also impair the financial integrity of the fund, according to the Board.
The Board, which is the fiscal agent for the fund, is properly concerned with maintaining its financial integrity. Because the fund is comprised of fees that are determined and assessed annually, there is some reason for concern that claims for reimbursement that are filed more than one year after an expense is incurred may jeopardize the solvency of the fund. However, that risk may be addressed by adoption of rules establishing priorities for payment and payment of claims by installment, which R.C. 3737.90(B)(2) expressly authorizes the Board to adopt "without limitation." Thus, late claims may be given a lower priority for payment, or paid in installments over a period of time. These alternatives allow adjustment of the next annual fee schedule to compensate for unanticipated claims. The Board is also authorized to impose supplemental fees within the year if the fund balance falls below a specified amount. R.C.3737.91(C). That option permits the Board to avoid the risk of insolvency during the current year.
With respect to the Board's desire to verify claims earlier in time, because the extent of contamination is more difficult to determine with the passage of time, a rule requiring early reporting is necessary and appropriate to the Board's statutory charge. However, the statute makes no provision for disallowing claims on that basis when they are otherwise complete and proper. Further, to do so undermines the paramount purpose of the Board's statutory change, which is the protection of the public health and safety. Those values are compromised when a claim is disallowed, especially when the basis for disallowing the claim is additional to the procedures for payment expressly provided by the underlying legislation.
We find that Ohio Adm. Code 3737-1-07(A), to the extent that it imposes a one-year filing requirement as a prerequisite for reimbursement of claims, unpermissibly adds to the legislative enactment which authorizes the Board to adopt, amend, and rescind such rules. Therefore, the rule is void, and the trial court erred when it affirmed the Board's contrary holding.
Amoco's assignment of error is sustained. The case is referred to the court of common pleas on our mandate to enter an order reversing the order of the Board denying Amoco's claims for reimbursements and to make an order requiring payment of them upon Amoco's applications, pursuant to R.C. 119.12.
WOLFF, J. and YOUNG, J., concur.
Copies mailed to:
David S. Hoffman, Esq.
Michael R. Blumenthal, Esq.
James J. Leo, Esq.
Hon. John W. Kessler