JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Petroleum Underground Storage Tank Release Compensation Board ("the Board"), appeals the decision of the lower court. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm the lower court.
 I {¶ 2} The Board reimburses responsible persons for the costs of corrective action due to accidental releases of petroleum. To be eligible, the responsible person must have paid the annual tank fees and have a valid certificate of coverage at the time of release. Pursuant to R.C. 3737.92 and O.A.C. 3737-1-07, the director shall grant eligibility if the director determines the release is from an underground storage tank that had a valid certificate of coverage at the time of the release, and the application for eligibility was timely filed. If the director grants eligibility, the tank owner must then submit claims for reimbursement of corrective action costs.
 {¶ 3} In June 2003, appellee John Phillips, dba Phillips Marathon, discovered a petroleum release on his property located in Chagrin Falls, Ohio. As a result, Phillips filed an application for eligibility for compensation from the Board. The director of the Board denied Phillips's application, determining that the release occurred in 1989 and not 2003 as reported by Phillips. Phillips filed an objection to the director's denial on July 19, 2004.
 {¶ 4} An administrative hearing was conducted on March 21 and April 14 of 2005. The parties presented evidence and argued that Phillips was not in *Page 4 
compliance with state fire marshal rules regarding the suspected release in 1989. The hearing officer issued a recommendation that the Board affirm the director's denial of eligibility. In the recommendation, the hearing officer did not dispute that a release occurred in June 2003, but, rather, found that Phillips was not in compliance with the state fire marshal rules related to the suspected 1989 release. The Board then accepted the hearing officer's findings of fact, conclusions of law, and recommendation in their entirety and issued an adjudication order on July 7, 2006.
 {¶ 5} On July 21, 2006, Phillips filed a timely notice of appeal of the adjudication order in the common pleas court. The parties briefed the matter fully. The lower court judge reversed the decision of the Board. The judge stated that according to the evidence, the release occurred in 2003 when Phillips had a valid certificate of coverage. It is from that order that the Board now appeals.
 {¶ 6} Phillips Marathon is owned and operated by John Phillips and is located at 10 West Orange Street, Chagrin Falls, Ohio. It was an operating gas station for approximately 25 years, until mid-2003. During the time when Phillips was selling gasoline, two 6,000-gallon underground petroleum storage tanks were connected by pipelines to the pump dispensers. Until 1998, two 4,000-gallon petroleum storage tanks were also located on the property, but were not in use while Phillips owned Phillips Marathon.
 {¶ 7} In October 1989, Gamekeepers, a nearby restaurant, reported gas fumes in the basement of its building. As a result, Reggie Brown from the Environmental Protection Agency ("EPA") came to investigate the suspected release *Page 5 
of petroleum. Petroleum vapors and free petroleum product were found in the storm sewer near Phillips Marathon. On November 1 and 2, 1989, Phillips had his tanks and lines "tightness tested," and the tanks and lines tested tight. Brown reviewed the tests and informed Phillips that there were no signs of any leaks from Phillips's tanks. Therefore, no release was confirmed.
 {¶ 8} Subsequently, in March 1990, Gamekeepers again reported petroleum vapors in its basement. Brown again investigated and instructed Phillips to take soil borings and to install monitoring wells as close as possible to the tanks, and then excavate around the old unused tanks to check for possible leaks. Phillips hired EDP Triggs to take the borings and install monitoring wells. EDP Triggs installed wells designated EDP MW-2 and RCW at the locations where the soil borings were taken. The borings and monitoring wells showed no signs of free product, and the 4,000-gallon tanks were completely dry. On March 22, 1990, EDP Triggs's final report concluded that the contamination in the sewer south of Phillips Marathon could not have come from Phillips's tanks. Brown from the EPA again reported to Phillips that there were no leaks from his property. Again, no release was confirmed.
 {¶ 9} In November 1998, Phillips had the unused tanks removed. The pipelines running from the northern 6,000-gallon tank to the pump dispenser had to be removed and replaced during this process. After the completion of this project, Phillips had a closure assessment report prepared by Marlin Company and a tank integrity test conducted by Tank Integrity Systems. The Marlin Company report *Page 6 
indicated that the soil samples in the east cavity tested far below action levels after the tanks were removed. The tank integrity test also indicated compliance.
 {¶ 10} The Bureau of Underground Storage Tank Regulations (BUSTR) is an agency under the Ohio state fire marshal's authority that regulates the safe operation of underground storage tanks.
 {¶ 11} There is no dispute that BUSTR made numerous requests beginning in 1990 to have Phillips perform a site assessment for the 1989 suspected release. However, Phillips did not do so until spring 2003, because he believed he had assurances from the EPA representative, as well as Felicia Cheatem from the Board, that he did not need to do anything further. However, after continued requests by BUSTR to have a site assessment, Phillips hired EnviroMatrix to review the letter he had received from the fire marshal and determine a course of action. EnviroMatrix noted the existence of two monitoring wells on the site already and made plans to install three ground water-monitoring wells. It opened the existing wells on the same day, May 28, 2003, that it physically installed the borings at the site. These borings were later converted to monitoring wells and labeled MW-1, MW-2, and MW-3. The existing wells were checked later that day, and there was no indication of petroleum being released.
 {¶ 12} EnviroMatrix returned to the site about a month later to check all of the wells — those installed by EnviroMatrix, and the existing wells that had been installed by EDP Triggs. EnviroMatrix found contamination at boring B-1, eventually becoming well MW-1, which was placed at the southeast corner of the property near *Page 7 
the storm sewer where the 1989 contamination occurred. This was expected by Mr. Dattilo, the engineer from EnviroMatrix, because of the prior reports of free product in the storm sewer directly adjacent to the contaminated property. Dattilo determined that this contamination was preexisting and not connected to Phillips's tanks or lines.
 {¶ 13} EnviroMatrix also discovered free product in EDP MW-2, a well that had been checked a month earlier and contained no product. At the same time, Phillips was experiencing problems with his pump system and believed he could possibly have a leak in the line. Dattilo thought that was likely because of the free product found in EDP MW-2, when there had been none the month before. Dattilo concluded that the recent contamination was due to a compromised line. The Board was contacted and the suspected release was reported. It was then that Phillips made the decision to have the remaining tanks removed and leave the gas-pumping business.
 {¶ 14} Precision Pump was hired by Phillips to excavate and remove the tanks. It found a cracked pipe around which the petroleum odor was strong.[1] In addition, while Precision Pump excavated the tanks, EnviroMatrix took soil core samples every 20 feet, starting with the northern tank, along the pipeline from the northern tank to the gas pumps. The samples were clean until EnviroMatrix reached the 80-foot mark, *Page 8 
when the samples suddenly began showing a high concentration of petroleum. The 80-foot mark was close to the southeast corner of the service station building, at the northeast corner of the building near the gas pumps.
 {¶ 15} EnviroMatrix determined that a one-time release of at least 25 gallons of petroleum occurred where the pipe was cracked, and the free product flowed west from the break in the pipe to EDP MW-2, causing the four inches of free product in that well. EnviroMatrix installed a recovery well to recover the free product that was discovered in EDP MW-2, and Precision Pump excavated and removed most of the material that was contaminated with petroleum from the 2003 release.
 {¶ 16} All relevant reports were provided to the Board. In August 2003, after the clean up of the June 2003 release was completed, Phillips applied for eligibility for compensation from the Board, which was denied. The Board stated that the contamination was not the result of the 2003 release, but rather linked it to the 1989 suspected release. On appeal, the common pleas court determined that the Board had erred, because the record was void of any evidence that the 1989 alleged contamination could be linked to the June 2003 release. Therefore, the common pleas court determined that Phillips is eligible for benefits. The Board now appeals the common pleas court's decision.
 II *Page 9 {¶ 17} Appellant's first assignment of error provides the following: "The lower court erred in substituting its own judgment when it reversed the petroleum board underground storage tank release compensation board's order. (Opinion and order)."
 {¶ 18} Appellant's second assignment of error provides the following: "The lower court erred in finding appellant's order was not supported by reliable, probative, and substantial evidence and was not in accordance with law. (Appellee-appellant's adjudication order)."
 III {¶ 19} R.C. 3737.91 created Ohio's Petroleum Underground Storage Tank ("UST") Release Finance Assurance Fund ("the Fund"). The Fund's primary purpose is to "protect Ohio's water resources and reduce pollution by creating a fund to reimburse owners and operators of USTs for the costs of corrective actions in the event of a release of petroleum into the environment and to compensate third parties for bodily injury and/or property damage resulting from such occurrences." State ex rel.Petroleum Underground Storage Tank Release Com p. Bd. v. Withrow (1991),62 Ohio St.3d 111, 579 N.E.2d 705; R.C. 3737.92(B). *Page 10 
 {¶ 20} The standards of review in both the common pleas court and the court of appeals on an administrative appeal pursuant to R.C. 119.12
are: When reviewing an order of an administrative agency, a common pleas court acts in a "limited appellate capacity. In reviewing an order of an administrative agency pursuant to R.C. 119.12, the common pleas court is bound to affirm the agency's order `if it is supported by reliable, probative, and substantial evidence, and is in accordance with the law. The common pleas court must give due deference to the administrative resolution of evidentiary conflicts and therefore must not substitute its judgment for that of the administrative agency. An appellate court's review of the common pleas court's decision is even more limited and requires the appellate court to determine only if the common pleas court has abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality or moral delinquency. Where the common pleas court applies a standard of review greater than that called for in R.C. 119.12, the trial court has abused its discretion.'" In re Senders (1996), 110 Ohio App.3d 199.
 {¶ 21} Due to the substantial interrelation between appellant's two assignments of error, we shall address them together. Here, appellant argues that the lower court substituted its own judgment when it reversed the Board's order. Appellant further argues that the common pleas court's order was not supported by reliable and substantial evidence. We do not find merit in appellant's arguments.
 {¶ 22} The common pleas court reversed the Board and issued an opinion and order on March 7, 2008, stating the following: *Page 11 
 "Plaintiff seeks financial assistance from the Financial Assurance Fund for a petroleum release which occurred at 10 West Orange Street in Chagrin Falls, Ohio. The Petroleum Underground Storage Tank Release Compensation Board denied the request on June 17, 2004 for the following reasons. First, the board issued a denial because the application was untimely given that the 2003 release relates back to a 1989 release. Second, the board denied the request because the Plaintiff did not have a valid certificate of coverage in 1989. The Plaintiff appealed and contends that the two releases are unrelated. The Plaintiff contends that he carried insurance for the tanks that were used, but not for two empty tanks. ***"
 {¶ 23} The common pleas court further found that:
 "[T]he Plaintiff is entitled to benefits because the two alleged leaks occurred in different locations on the property and the record is void of any indication that the two are related. In fact, the second leak occurred in an area where repair work was completed sometime after the first suspected release. If the area was affected, the release would have been detected at the time the lines were replaced. No such release was found. The Defendant's reliance on Plaintiff's failure to comply with BUSTR's repeated requests for a site inspection is meritorious but not dispositive."
(Emphasis added.)
 {¶ 24} The trial court did not find the BUSTR requests to be dispositive for the following reasons:
 "The BUSTR rules clearly require that all suspected releases requiring reporting under paragraph K of rule 1301:7-7-28 of the Administrative Code shall be investigated and confirmed or disproved by the owner or operator. (BUSTR Rule 36 — Suspected Release Confirmation). The problem in this case is that the first suspected release was not directly tied to the property at issue. A report was made for a fuel smell in the vicinity of Plaintiff's property. EPA and other officials appeared on the site and checked several properties. Although wells were installed on the Plaintiff's property, no samples were taken. When the tanks test tight additional site assessments are not usually required. (See Duann Depo.) The tanks at issue tested tight and the EPA *Page 12 contacted the Plaintiff to say that they did not believe a release occurred. It is undisputed that the Plaintiff failed to comply with BUSTR's repeated requests for a site assessment. However, the mere fact that no site assessment was done does not mean that a release occurred in 1989. Therefore, in the absence of evidence of a leak in 1989, Plaintiff is entitled to recover for the 2003 release."
(Emphasis added.)
 {¶ 25} The lower court found appellant's claim that Phillips failed to maintain a valid certificate of coverage in 1989 to be misplaced.
 {¶ 26} R.C. 3737.92(D)(1), provides the following:
 "A responsible person is not eligible to receive payment or reimbursement from the fund under division (B) or (C) of this section unless all of the following conditions are met:
 "(1) at the time that the release was first suspected or confirmed, a responsible person possessed a valid certificate of coverage issued by the board under division (D) of section 3737.91 of the Revised Code for the petroleum underground tank system from which the release occurred."
 {¶ 27} The release at issue in this benefits request concerns the 2003 release. The lower court found that the evidence demonstrated that Phillips did indeed have a valid certificate of coverage in place in 2003 and, therefore, the benefits were available to him. This court's review of the evidence in the record yields the same result.
 {¶ 28} A review of the decision of the Board is limited. In an administrative appeal, pursuant to R.C. 119.12, the standard of review for an Ohio court of appeals is more limited than a common pleas court because a court of appeals does not determine the weight to be given the evidence. The standard of review upon factual issues is whether the common pleas court abused its discretion in finding the *Page 13 
administrative order was or was not supported by reliable, probative, and substantial evidence. When the issue is a question of law, a court of appeals makes its own determination of the law to be applied to the facts found by the agency. In re Senders, supra.
 {¶ 29} A reviewing court must give deference to an administrative agency's interpretation of its own rules and regulations where such interpretation is consistent with the statutory law and the plain language of the rules. State ex rel. Celebrezze v. Natl. Lime StoneCo. (1994), 68 Ohio St.3d 377, 382, 627 N.E.2d 538; Jones Metal ProductsCo. v. Walker (1972), 29 Ohio St.2d 173, 181, 281 N.E.2d 1; CuyahogaCty. Bd. of Commrs. v. Ford (1987), 35 Ohio App.3d 88, 92, 520 N.E.2d 1.
 {¶ 30} In the case at bar, the lower court made its decision only after conducting an extensive analysis of all the evidence presented. Moreover, this court has also reviewed the record and found the evidence to support the lower court's decision. There is no evidence in the record to demonstrate that a release occurred in 1989. Moreover, there is no evidence demonstrating that any hypothetical 1989 release was linked to the 2003 release. The technical testimony, evidence, and documents presented in this case support the lower court's March 7, 2008 opinion and order. Therefore, we find no abuse of discretion.
 {¶ 31} Accordingly, the lower court's decision is affirmed, and appellee Phillips is permitted to continue in the process of applying for and receiving benefits *Page 14 
pursuant to R.C. 3737.92 and the applicable regulations. We find no error on the part of the lower court's decision to reverse the Board's order.
 {¶ 32} Accordingly, appellant's first and second assignments of error are overruled. The judgment of the trial court is affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, A.J., and MARY J. BOYLE, J., CONCUR.
[1] A line test was conducted at the site and the line test subsequently failed. Precision Pump pressurized the dispenser and determined there was a vapor lock. Precision Pump removed all of the fuel from the tanks and participated in the excavation of the petroleum tanks. See appellant's brief, p. 5. Also see, Apr. 14, 2005, hearing transcript concerning statements made by Anthony A. Dattilo, Ph.D. Tr. 78. *Page 1